UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ISABEL NIEVES,

                Plaintiff,                          **MEMORANDUM**
                                                    **AND ORDER**

      - against -

                                                        97 CV 6669 (CLP)

CITY OF NEW YORK, et al.,

                Defendants.
----------------------------------------------------X

On November 13, 1997, plaintiff Isabel Nieves initiated this action, pursuant to 42 U.S.C. § 1983, against the City of New York ("City"), and against Frank Wessels and Michael Diaz, officers of the New York City Police Department ("NYPD").[1] In her Complaint, plaintiff Nieves, an off-duty police officer with the NYPD, alleges that during a traffic stop on October 2, 1996, Officer Wessels and Officer Diaz falsely arrested her and subjected her to excessive force in violation of her constitutional and civil rights.

Following discovery and extensive motion practice, the case proceeded to trial[2] on plaintiff's claims that (1) Officer Wessels used excessive force and (2) Officer Diaz failed to intervene to prevent harm to plaintiff. On April 16, 2004, the jury returned a verdict in plaintiff's favor on both claims, awarding compensatory damages in the amount of $50,001.00,[3] but

---

[1] Although not originally named as a defendant in plaintiff's original Complaint, the NYPD was named in plaintiff's Amended Complaint, filed on April 15, 1998.

[2] On January 8, 2003, the parties consented to trial before the undersigned.

[3] Specifically, the jury awarded (1) $50,000.00 on plaintiff's claim of excessive force against Officer Wessels and (2) the nominal amount of $1.00 on plaintiff's claim of failure to intervene against Officer Diaz.

declining to award punitive damages.

By Notice of Motion dated May 5, 2004, the City, the NYPD, Officer Wessels and Officer Diaz move for an order of judgment as a matter of law pursuant to Rule 50(a) and (b) of the Federal Rules of Civil Procedure, or, in the alternative, for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Having considered the arguments raised by the parties and the evidence presented at trial, this Court denies defendants' motions in their entirety.

## DISCUSSION

A. <u>Judgment Notwithstanding the Verdict</u>

1. <u>Standards</u>

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides:

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim [] that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.[4]

Fed. R. Civ. P. 50(a)(1). A court "may grant a judgment as a matter of law pursuant to [Rule 50(a)(1)] only if no reasonable jury could find for the non-moving party." Stagl v. Delta Air

---

[4] Rule 50(a)(2) specifies that "[m]otions for judgment as a matter of law may be made at any time before submission of the case to the jury." Fed. R. Civ. P. 50(a)(2). However, "[i]f, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment – and may alternatively request a new trial or join a motion for a new trial under Rule 59." Fed. R. Civ. P. 50(b).

2

Lines, Inc., 117 F.3d 76, 79 (2d Cir. 1997) (citation omitted). Judgment notwithstanding the verdict is appropriate when:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the moving party].

Williams v. County of Westchester, 171 F.3d 98, 101 (2d Cir. 1999) (quoting Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994)).

In evaluating a motion for judgment notwithstanding the verdict, the court must view the evidence in the light most favorable to the nonmoving party and must deny the motion unless "'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers, 34 F.3d at 1154-55 (citation omitted). The court is required to "give deference to all credibility determinations made by the jury and to all reasonable inferences from the evidence that the jury might have drawn in favor of the nonmoving party." Vasbinder v. Ambach, 926 F.2d 1333, 1339 (2d Cir. 1991) (citations omitted); see also Playtex Products, Inc. v. Proctor & Gamble Co., No. 02 CV 8046, 2004 WL 1658377, at *2 (S.D.N.Y. July 26, 2004).

2. Application

In seeking judgment notwithstanding the verdict, defendants argue that no reasonable jury

could have found that Officer Wessels used excessive force. (Defs.' Mem. at 7-8).[5] Specifically, defendants contend that plaintiff failed to offer medical evidence to support her claim that during the course of the traffic stop at issue, Officer Wessels grabbed her by the neck and repeatedly pushed her face into the ground. (Id. at 5-8). In the absence of such evidence, defendants argue that judgment should be entered in their favor. (Id. at 8).

In determining the "reasonableness" of a particular seizure, the "use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989) (citation omitted). As defendants correctly note, the jury, in making this determination, may consider, among other factors, the extent of the injury inflicted. (Defs.' Mem. at 3). See Bowles v. New York, 37 F. Supp. 2d 608, 612 (S.D.N.Y. 1999) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973)).

At trial, plaintiff testified that during the traffic stop at issue, Officer Wessels "grabbed my neck" with his right hand and held "my left arm" with his left hand. (Tr. at 110).[6] Plaintiff explained that after Officer Wessels grabbed her neck:

> I started screaming. I was like "get off me. You are hurting me. Get off me." He was like "get in the fucking car." And I said "get

---

[5] Citations to "Defs.' Mem." refer to Defendants' Memorandum of Law in Support of their Motion for Judgment as a Matter of Law or for a New Trial, dated May 5, 2004, filed by defendants.

[6] Citations to "Tr." refer to the transcript of the first day of trial proceedings, which were held before this Court on April 7, 2004; citations to "Tr. II" refer to the transcript of the second day of proceedings, held on April 8, 2004; citations to "Tr. III" refer to the transcript of the third day of proceedings, held on April 14, 2004; citations to "Tr. IV" refer to the transcript of the forth day of proceedings, held on April 15, 2004; and citations to "Tr. V" refer to the transcript of the fifth day of proceedings, held on April 16, 2004.

> off me." I started to bend and crouch. I said "you are hurting me.
> You are hurting me. Get your fucking hands off me." And he was
> still squeezing me, my neck so hard and arm squeezing me to go
> forward. I'm trying not to go forward. I'm embracing myself to go
> down. I want him off me. I told him "you are hurting me. Get
> your fucking hands of me."

(Id. at 111). According to plaintiff, the force used on her neck was "very painful" (id.), and Officer Wessels "would not let go of this grip . . . . and the grip was so strong [and] caused a lot of pain." (Id. at 111-12). Plaintiff further testified that Officer Wessels' grip was "so painful that my reaction was to go down [to the ground]." (Id. at 112).

Plaintiff explained that in an effort to get Officer Wessels' hand off of her neck, "I pulled my whole body back." (Id.) In the process, plaintiff accidently hit Officer Wessels in the face. (Id. at 112-13). Describing Officer Wessels' response, plaintiff testified that Officer Wessels "was like an angry, angry man. He was like how dare you put your hands on me. And he just started running towards me . . . . He was going to tackle me so I put my hand in front of me . . . and I took the tackle. We went back, boom." (Id. at 113). At that point, plaintiff "fell back on my back to the side and he shoved me, turned me around, shoved me on the floor sitting on my back and squeezing my head and my neck back to the ground shoving my face down." (Id.)

According to plaintiff, while she was on the ground, Officer Wessels "basically picked up my body because I was on my side and now put me on my stomach. . . . he had my neck and face down to the grass" and he "kept shoving my face" into the ground. (Id. at 115). Plaintiff kept picking up her head and asking "'what are you doing?'" (id.), and "'why are you doing this to me?'" (Id. at 116). In response, Officer Wessels "grabbed my back, my head and shoved me back to the ground, the grass" (id. at 116-17), and "sitting on my back with his hands on my neck

5

. . . . he bent his face and he basically was teeth clamped, [and said] 'shut the fuck up, bitch, women don't belong on this job.'" (Id. at 117).

Plaintiff testified that Officer Wessels "cuff[ed] my left arm . . . . and he [was] squeezing it above my head. He [was] trying to cuff me going . . . above my head[,] not behind my back." (Id. at 115). According to plaintiff, this handcuffing technique is inconsistent with proper police procedures. (Id.) At that point, Officer Diaz intervened, bringing plaintiff's arm down the proper way and giving her arm to Officer Wessels to cuff. (Id. at 116).

Defendants argue that if the events had occurred in the manner described by plaintiff, there would have been "at least some" evidence in the form of physical injury to plaintiff. (Defs.' Mem. at 5). Defendants cite the testimony of Dr. James Kenny, the doctor who examined plaintiff at Staten Island University Hospital on the morning after the incident at issue. (Id. at 5-7). Based upon his notations taken during plaintiff's physical examination, Dr. Kenny testified that he found no evidence of trauma to or swelling of plaintiff's head and no scratches or other markings on her face. (Tr. II at 383). Dr. Kenny also indicated in his report that plaintiff's neck was "supple NT," meaning that Officer Nieves' neck "move[d] easily back and forth during the examination," and was not tender. (Id. at 395).

Defendants argue that Dr. Kenny's testimony contradicts plaintiff's version of the incident at issue because if Officer Wessels had grabbed plaintiff's neck in the way she described, her neck would not have been "'supple'" and "free of any tenderness." (Defs.' Mem. at 6). Defendants also point out that plaintiff specifically denied suffering from any type of neck

6

pain at the time of Dr. Kenny's examination. (Id. (citing Biberman Decl., Ex. C)).[7] Defendants assert that the absence of any scratches, bruises, swelling or any other marking on plaintiff's face belies her testimony that Officer Wessels repeatedly shoved her face into the ground. (Id. at 6-7). Thus, defendants argue that "[i]t is abundantly clear that plaintiff has not set forth a sufficient evidentiary basis to lead a rational trier of fact to find that the officers' actions were not reasonable in light of the circumstances." (Id. at 7).

Instead, defendants contend that plaintiff's "minimal" injuries are consistent with Officer Wessels' description of the altercation at issue. (Id.) Defendants claim that plaintiff's injuries support Officer Wessels' testimony that he grabbed plaintiff by her right arm to stop her from leaving the scene; that he grabbed her neck and pushed her legs out from under her; and that she was kicking and screaming when he tried to cuff her. (Id. (citing Tr. II at 423-24)).

Even if this Court were to be persuaded by defendants' argument that Dr. Kenny's testimony regarding the absence of physical injuries to Officer Nieves' neck and face contradicts plaintiff's testimony, Dr. Kenny's testimony is only one factor that the jury could have considered when determining plaintiff's credibility. Defendants' argument simply does not satisfy the standard under which this Court is to evaluate defendants' motion for judgment notwithstanding the verdict.

The Court must find "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture'" or "'such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded

---

[7] Citations to "Biberman Decl." refer to the Declaration of Dana Biberman, counsel for defendants, dated May 5, 2004, submitted in support of defendants' motion for judgment as a matter of law or for a new trial.

7

[persons] could not arrive at a verdict against [the moving party].'" Williams v. County of Westchester, 171 F.3d at 101 (quoting Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers, 34 F.3d at 1154). Viewing the evidence in the light most favorable to plaintiff, see Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers, 34 F.3d at 1154-55 (citation omitted), and giving deference to the jury's determination of credibility, see Vasbinder v. Ambach, 926 F.2d at 1339 (citations omitted), this Court finds more than sufficient evidence to support the jury's verdict in this case.

While it is true that Dr. Kenny found no apparent injuries to plaintiff's neck or face, there is still substantial evidence to support plaintiff's claim that she suffered physical injuries as a result of Officer Wessels' excessive use of force. For instance, before plaintiff went to the hospital, while she was at the 123rd Precinct, plaintiff told Frank Cappola, her union delegate, that "she had pain to her shoulder," and Officer Cappola recalled seeing "dried blood in one of her ears." (Tr. at 180). This testimony by Officer Cappola is entirely consistent with plaintiff's account of the force applied to her head and neck by Officer Wessels.

Moreover, Dr. Kenny testified that plaintiff suffered physical injuries in the form of a "contusion of the shoulder and chest." (Tr. II at 388). During his examination, Dr. Kenny found "tenderness of the anterior and lateral aspect of the chest" and "tenderness across the acromioclavicular joint," where "the collar bone comes together with the scapula." (Id. at 382). The doctor prescribed ice, Advil and rest, provided plaintiff with a sling for her shoulder and referred her to an orthopedist. (Id. at 389-90). The jury could reasonably have found plaintiff's injuries, as described by Dr. Kenny, to be entirely consistent with her testimony that she was shoved to the ground by Officer Wessels. Indeed, Dr. Kenny testified that throwing or slamming

a person to the ground could "[a]bsolutely" cause contusions to the shoulder area. (Id. at 392).

Based on the absence of any complaint by plaintiff of pain in her neck or evident physical injuries to her neck at the time of Dr. Kenny's examination, defendants challenge plaintiff's credibility. (Defs.' Mem. at 5-6). However, defendants never questioned Dr. Kenny as to whether someone who is grabbed by the neck and may not have complained of pain shortly after the incident may actually have suffered neck injuries or may feel neck pain at a later time. (See Tr. II at 391-396). This question was left to the jury to determine without the benefit of Dr. Kenny's opinion on this issue.

As plaintiff suggests,[8] the jury could have concluded that plaintiff's neck injuries did not develop until after Dr. Kenny's examination or that she failed to complain about neck pain at the time of the medical examination because the pain in her shoulder and her chest overshadowed the pain in her neck. (See Pl.'s Mem. at 7).[9] The jury may also have considered plaintiff's counsel's arguments questioning the thoroughness of the medical examination in light of the presence of police during the examination. (See id.). Finally, regarding the absence of cuts or scratches to plaintiff's face, the jury could have concluded, consistent with plaintiff's testimony, that Officer Wessels shoved her face to the ground in a grassy area, and not on the nearby cement sidewalk. (See id.).

---

[8] Defendants argue that this Court should not consider the arguments raised by plaintiff in her responsive papers filed in connection with this motion because the submission was filed out of time. (Defs.' Letter of July 13, 2004). Although defendants are correct that plaintiff's papers were untimely, the Court's analysis of the issues before it would have been the same even if the Court had not considered plaintiff's arguments.

[9] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Judgment as a Matter of Law or for a New Trial, dated July 8, 2004, filed by plaintiff.

Thus, having viewed the evidence in the light most favorable to plaintiff, see Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers, 34 F.3d at 1154-55 (citation omitted), this Court concludes that there was more than sufficient evidence for the jury, which obviously credited Officer Nieves' testimony,[10] to conclude that plaintiff suffered injuries consistent with her claim of excessive force. Accordingly, defendants' motion for judgment notwithstanding the verdict is denied.[11]

B. Motion for A New Trial

1. Standards

Rule 59(a) of the Federal Rules of Civil Procedure provides that a court may grant a new trial "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). The Second Circuit has held that the "grant of a new trial on the ground that the verdict was against the weight of the evidence is appropriate if 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634 (2d Cir. 2002) (quoting DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998)).

---

[10] The Court's assessment of a witness' credibility is irrelevant for purposes of deciding a motion for judgment notwithstanding the verdict. See Vasbinder v. Ambach, 926 F.2d at 1339 (citations omitted).

[11] Plaintiff also argues that defendants waived their right to make a motion for judgment notwithstanding the verdict on the specific grounds advanced in their motion papers because defendants failed to raise these specific grounds in their motion for a directed verdict. (Pl.'s Mem. at 1-3). Given the Court's decision on the merits of defendants' motion for judgment notwithstanding the verdict, the Court does not reach this issue.

Unlike a motion for judgment notwithstanding the verdict, the Court, in determining if the jury's verdict is so "'seriously erroneous'" as to merit a new trial, "is free to weigh the evidence and 'need not view [the evidence] in the light most favorable to the verdict winner.'" Id. at 634-35 (quoting DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d at 134). However, the "'jury's verdict . . . should rarely be disturbed.'" Id. at 635 (citations omitted).

2. Application

In support of their motion for a new trial, defendants again argue, as they did in connection with the motion for judgment notwithstanding the verdict, that "the uncontroverted medical testimony and documentary evidence directly contract plaintiff's description of the events." (Defs.' Mem. at 9). Accordingly, they assert that letting the jury's verdict stand would constitute a "grave miscarriage of justice." (Id.)

For all of the reasons stated above, the absence of medical testimony definitively proving injury to Officer Nieves' neck and face does not establish that the jury's verdict was "against the weight of the evidence." See Farrior v. Waterford Bd. of Educ., 277 F.3d at 634 (quoting DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d at 133). Although the substance of Dr. Kenny's medical testimony is a factor to consider in evaluating the verdict, it is not the only factor for this Court to examine. Given the other evidence supporting Officer Nieves' claims, including Officer Cappola's testimony regarding the injuries he observed and Dr. Kenny's testimony regarding the injuries he observed and diagnosed, a reasonable jury could have determined that Officer Nieves' version of events was corroborated.

Even if the Court were to disagree with the jury's assessment of credibility, the lack of

11

medical evidence, as cited by defendants, is not alone sufficiently persuasive to disturb the jury's credibility determinations or to warrant a finding that the jury verdict was "'seriously erroneous'" or "'a miscarriage of justice.'" See Farrior v. Waterford Bd. of Educ., 277 F.3d at 634 (quoting DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d at 133). Accordingly, defendants' motion for a new trial is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
May 9, 2004

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge